THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
FILE No. 1:22-CV-00243-MR

| | | |
|---|---|---|
| ASHLEE INSCOE, | ) | |
| | ) | |
| Plaintiff, | ) | **DEFENDANTS' REPLY TO** |
| | ) | **PLAINTIFF'S RESPONSE TO** |
| v. | ) | **DEFENDANTS' MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| NORTH CAROLINA | ) | |
| DEPARTMENT OF ADULT | ) | L.R. 7.2 |
| CORRECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | | |

Defendants reply to Plaintiff's response to Defendants' Motion for Summary Judgement as follows:

## FACTS

**Plaintiff's anatomy:**

Not something Undersigned would bring up unless made relevant, Plaintiff's medical records unequivocally conclude Plaintiff has a fully formed penis. Exhibit 1. The question of whether Plaintiff has a penis was relevant to explain why radiology results showing fully formed male anatomy and an absence of female anatomy otherwise indicated ambiguous genitalia. DE-64-4, (T pp 79-80). The ambiguity resulted from the type of imaging not being able to detect the penis, however, other medical records have concluded Plaintiff does have a fully formed penis. *Id*.

**PREA Reports:**

Plaintiff asserts: Defendants claim that all Plaintiff's PREA concerns are "unsubstantiated," yet they failed to produce records of investigations of at least eight PREA reports.' (D.E. 47-1 at ¶7). See Exhibit 2, PREA Report list provided.

Charlotte Jordan-Williams, PREA Director, did not participate in Plaintiff's PREA investigations. See Exhibit 3, ¶¶ 3, 5. Plaintiff argues Director Williams was "deeply involved." DE-69, pp 6-7. Director Williams did have a virtual meeting with Plaintiff. Exhibit 3, par. 5. This was at the request of DAC General Counsel. *Id*. GC contacted Williams over the Christmas holiday and asked Williams to meet with Plaintiff. *Id*. She did. *Id*. During the meeting, Plaintiff's counsel was present and was feeding Plaintiff questions and answers. *Id*. Ms. Williams took notes and accepted what Plaintiff had to say as PREA reports. *Id,* par. 6. She forwarded the report on for investigation at the facility level. *Id*. A short time later, Williams learned Plaintiff recanted all the PREA allegations to the PREA investigator. *Id*.

Later, on January 10, 2022, Williams received a 102-page document from Elizabeth Simpson with Emancipate NC. *Id*, par. 7. This document was forwarded to management for appropriate processing. *Id*. To Williams's knowledge, all of Plaintiff's PREA reports have had appropriate investigations. *Id*, par. 8.

**Pill hoarding:**

Plaintiff disputes the number of estradiol pills found in Plaintiff's possession, blames DAC for the overstock, and cites a November record as proof of compliance.

2

Case 1:22-cv-00243-MR    Document 74    Filed 08/27/25    Page 2 of 13

DE-69.

In a medical record Note Date: 07/06/2023 17:43 by provider Marc Downs, PA, it was noted "Patient was noted to have over 450 estradial pills indicating non compliance with medication. Further lab testing showed elevated FSH, LH indicating long term non compliance." Exhibit 4. The manner in which estradial interacts with FSH and LH hormones, Plaintiff's levels show a history of noncompliance. Exhibit 5, Declaration of Marc Downs. (As opposed to compliance with medication and an overstock due to DAC error). See Exhibit 6 (documenting high estradiol levels).

Shortly before catching Plaintiff with excessive amounts of estradiol, in an Encounter Date: 06/09/2023 23:47 with provider Dr. Javaid Wani, it was recorded "Patient's UR for estradiol is expiring soon (June 18) and she is very concerned that she might run out of estradiol. Patient is very anxious." Exhibit 7. At this encounter date, Plaintiff should have plenty of estradiol from the claimed overstock mistake.

> In a Note Date: 07/06/2023 11:13, PA Downs writes to Dr Wani,
> I would suspect lnscoe still wants to manipulate how, when or if the estrogen is taken. A nurse also stated Inscoe threatened to stop taking the biktarvy if estrogen was not given back KOP. I believe again that this is an attempt at getting the estrogen back KOP so they can manipulate it. In my opinion Offender Inscoe appears very determined to manipulate or not take the estrogen they are prescribed. I can provide the nurses names to you or get more information on this if you wish.

Exhibit 8.

**Gender Affirming Surgery Fraud:**

3

Plaintiff doubles down on the orchiectomy surgery being gender affirming. DE-69. Dr. Figler was approved to conduct the surgery based on testicular pain. DE-64-4, (T p 86). Dr. Figler, in fact, performed the surgery based on testicular pain. *Id*; Exhibit 9, (operative notes showing preoperative diagnosis testicular pain).

Showers: Plaintiff has private showers available and declines. Exhibit 10, ¶¶ 4-5, Warden Lee Declaration. The showers at Nash are inherently private and Plaintiff, along with other transgender inmates who enter Nash CI requesting private showers, soon forego this accommodation as not necessary. *Id*, ¶ 5. Plaintiff could request private showers and they would be provided. *Id*.

## ARGUMENT

**Res Judicata**

Plaintiff incorrectly argues North Carolina res judicata law does not prohibit Plaintiff from relitigating the same issues to try and gain a different outcome.[1] DE-69. North Carolina law parallels the federal common law and supports dismissal of this action.

Under Res judicata, "all matters, either fact or law, that were or should have been adjudicated in the prior action are deemed concluded."

*Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986). Moreover, "subsequent actions which attempt to proceed by asserting a new legal theory or by seeking a different remedy are prohibited under

---

[1] The question of anlyzing under federal or state law has found federal common law appropriate even with underlying state judgments when privety not at issue. *Harnett v. Billman* 800 F.2d 1308, 1313 (4th Cir. 1986).

4

the principles of res judicata,"

*Bockweg v. Anderson*, 333 N.C. 486, 494, 428 S.E.2d 157, 163 (1993). Here, Plaintiff's first mandamus action arose from alleging to be a woman housed in a male facility, the same as alleged and argued here, subjecting to dismissal for claim preclusion, as Plaintiff should have brought the actions against DAC together instead of conducting piecemeal litigation. *Harnett v. Billman* 800 F.2d 1308, 1313-14 (4th Cir. 1986), because "the judgment in the former action or proceeding is conclusive in the latter not only as to all matters actually litigated and determined, but also as to all matters which could properly have been litigated and determined in the former action or proceeding." *Fickley v. Greystone Enters., Inc.*, 140 N.C. App. 258, 260, 536 S.E.2d 331, 333 (2000).

The long established principle of issue preclusion finds that where the second action between the same parties is upon a different claim, the judgment in the first action bars the second "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *King v. Grindstaff*, 284 N.C. 348, 357, 200 S.E.2d 799 (1973) Quoting Cromwell *v. County of Sac*, 94 U.S. 351, 353 (1877). Issue preclusion applies when: "(1) The issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to

5

the resulting judgment." *King,* at 359. "'[Collateral estoppel's] requirement that an issue must have been determined by adjudication in the prior action is . . . significant . . . in situations in which the issue was undoubtedly raised and litigated in the prior action, but either was not in fact determined or cannot conclusively be shown to have been determined by the resulting judgment. In discovering what issues were determined by the judgment in a prior action, the court in the second action is free to go beyond the judgment roll, and may examine the pleadings and the evidence in the prior action. And if the rendering court made no express findings on issues raised by the pleadings or the evidence, the court may infer that in the prior action a determination appropriate to the judgment rendered was made as to each issue that was so raised and the determination of which was necessary to support the judgment.'" *King*, at *360 quoting 1B Moore's Federal Practice § 0.443[4] (2d Ed. 1965); *Southerland v. Atlantic C. L. R. R*., 148 N.C; *King v. North Carolina DOT, 121 N.C. App. 706, 710, 468 S.E.2d 486 (1996)*. 442 (1908) ("It is a well-established rule of law that every material fact involved in an issue must be regarded as determined by the final judgment in the action, so as not to be a subject of trial in any subsequent proceeding between the same parties.").

Plaintiff's first action petitioned for a writ of mandamus. "'It is well settled law that Mandamus cannot be invoked to control the exercise of discretion of a board, officer, or court . . . unless it clearly appears that there has been an abuse of discretion.'" *Inscoe v. Ishee*, 915 S.E.2d 448, 459 (2025) quoting *Moody v.*

*Transylvania Cnty.*, 271 N.C. 384, 390, 156 S.E.2d 716, 720 (1967)). In *Inscoe*, the trial court concluded there was no abuse of discretion under PREA 28 C.F.R. part 115, federal, or state law. *Id*, at 456. Therefore, the entire record, as it goes to determining the discretion applied was actually litigated. In that litigation. In that litigation, the DTARC minutes and uncontested testimony concludes all Plaintiff's PREA allegations were recanted or unsubstantiated. The same for Plaintiff's pill hoarding, safety and security at the current placement, and being appropriately accommodated. Plaintiff relied on the gender marker change based on, if considered gender affirming, a fraudulently obtained and fraudulently conducted orchiectomy. For the forgoing, Plaintiff's present claim should be dismissed on principles of res judicata. *Johnson v. County of Avery*, COA02-163, 2003 N.C. App. LEXIS 278 (2003). (unpublished) (when Plaintiff first brought a petition for writ of mandamus, the second action brought under 42 U.S.C. § 1983 and other theories was barred); *Northwestern Financial Group v. County of Gaston*, 110 N.C. App. 531, 430 S.E.2d 689, disc. review denied, 334 N.C. 621, 435 S.E.2d 337 (1993) (same).

**Plaintiff's Eighth Amendment Affidavit**

Plaintiff presents an unsupported self-serving affidavit attesting to the allegations in the complaint and argues this is sufficient to carry the case to a jury. DE-70-1; DE-70. Plaintiff's proffered affidavit is insufficient to create a genuine issue of fact when Plaintiff did not contest testimony the PREA allegations were recanted and Defendants declarations are supported by disinterested parties to the

7

action. Moreover, the court can disregard an affidavit when it lacks plausibility. *Denton v.* Hernandez, 504 U.S. 25, 29 and 32 (1992) (acknowledging district court authority to dismiss complaints deemed fanciful, fantastical, and delusional, as done in the context of implausible prison rape allegations). Here, Plaintiff's allegations are fanciful or delusional in the context of recanted allegations, repeated claims of being safe, no medical records, rape in a public building with no report to authorities or medical professionals or observation by others, and increasingly alleged coinciding with critical moments in litigation.

**Plaintiff's Eighth Amendment Injunctive Relief**

Plaintiff argues against Dr. Campbell's credibility due to not having actually examined Plaintiff in nperson, merely reviewed the medical records, and because Dr. Campbell's objectivity was called into question in a different case focusing on different issues. *Zayre-Brown v. N.C. Dep't of Pub.* Safety, 2024 U.S. Dist. Lexis 69358, 2024 WL 1641795 (W.D.N.C. Apr. 16, 2024) (analyzing DTARC denial of medical necessity for gender affirming surgery). Here, Dr. Campbell reviewed Plaintiff's medical records in the utilization review process for DAC approval of Plaintiff's orchiectomy and was a representative from a medical perspective on Plaintiff's request to transfer to a female prison and to be strip searched by women. This necessitated a review of Plaintiff's medical records. Plaintiff's medical records unequivocally find Plaintiff has a penis. The radiology where ambiguous genitalia was observed was ambiguous as to the existence of the penis, based on the

limitations of the test, while the available test concluded all male anatomy and no female anatomy and other medical records cleared the ambiguity by recording a fully formed penis. DE-64-4 (T pp 79-80) (Dr. Campbell testimony).

**Showers, searches, security**

Plaintiff's issues with showers not being private enough, searches not being accommodated to Plaintiff's desired level, and security complaints go beyond what is constitutionally required. *Jasmaine v. Ingram*, 2020 U.S. Dist. Lexis 139230, *6-8, 2020 WL 4504433 *(W.D.N.C. Aug. 5, 2020) (Judge Reidinger opinion finding a transgender woman's complaints that a particular shower was not private enough failed to demonstrate an Eighth Amendment violation); Rhodes v. Chapman*, 452 U.S. 337349 ((1981) (The Constitution does not mandate comfortable prisons). Of note, Plaintiff's desired accommodation to be searched only by female officers was accommodated by FTARC decisions found in Defendants Exhibit 7 to their Motion for Summary Judgment: "Pat searches may be performed by female staff when available. Custody staff conducting searches will be reminded to remain professional In their…practices, to follow policy, and to limit invasive nature of searches when feasible." DE-64, Exhibit 7; See Exhibit 10, ¶ 8. .

**Mootness**

Plaintiff argues transfer to Nash does not moot injunctive relief sought. Plaintiff's specific allegations stem from time at Avery Mitchell CI. Plaintiff's transfer to Nash moot any claim based out of treatment at Avery Mitchell and the

9

focus is on treatment at Nash. *Sims v. Clarke*, 2020 U.S. Dist. LEXIS 46837, 2020 WL 1279402 (W.D.Va. Mar. 16, 2020) (The transfer or release of a prisoner generally renders moot any claims for injunctive or declaratory relief relating to the **former** place of confinement.) (emphasis added); *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009, ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration **there**.") (emphasis added).

### Fourth Amendment Strip Searches

Plaintiff points out a citation error in Defendants brief. The correct cite for the PREA regulation is 28 C.F.R. 115.15, not 115.115. The citation was a type-o. Also, the cite to 28 C.F.R. 115.41 should be to 28 C.F.R. 115.42. Defendants otherwise incorporate Fourth Amendment arguments presented in their brief and response brief.

## CONCLUSION

For the forgoing, Defendants' Motion for Summary Judgment should be granted.

This the 27th day of August, 2025.

**Jeff Jackson**
**ATTORNEY GENERAL**

/s/ J. Locke Milholland, IV
J. Locke Milholland, IV
Special Deputy Attorney General
N.C. State Bar No. 35449
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602-0629
Telephone: (919) 716-6545
Fax: (919) 716-6761
E-mail: jmilholland@ncdoj.gov

### ***CERTIFICATION OF INTELLIGENCE USED IN PREPARATION OF FILING***

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg;

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This, the 27th day of August, 2025.

/s/J. Locke Milholland, IV
J. Locke Milholland, IV
Special Deputy Attorney General

# CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court utilizing the CM/ECF system, and have served the Plaintiff, a *non* CM/ECF participant via regular United States Mail, first-class, postage prepaid, addressed as follows:

Elizabeth Simpson
N.C. Bar No. 41596
EMANCIPATE NC
P.O. Box 309
Durham, NC 27702
919-682-1149
elizabeth@emancipatenc.org
*Counsel for Plaintiff*

This the 27th day of August, 2025.

/s/J. Locke Milholland, IV
J. Locke Milholland, IV
Special Deputy Attorney General