# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## No. 1:22-CV-00243-MR

| | |
|---|---|
| **ASHLEE INSCOE,** | |
| **Plaintiff,** | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR TRO AND PRELIMINARY INJUNCTION (Rule 65)** |
| **v.** | |
| **NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION,** *et al.*, | |
| **Defendants** | |
| **.** | |

Prison officials must take reasonable measures to protect incarcerated people from known, substantial risks of sexual assault and serious harm. Plaintiff, an intersex female, is housed in a men's facility where she has been stalked, threatened, sexually harassed, and sexually abused (masturbated at). Officials have repeatedly been alerted to the danger. Plaintiff's complaint sought injunctive relief related to the ongoing risk of serious harm in men's prison facilities. D.E. 1-1, 208. Now, it is an emergency. The risk is immediate, the

1

harm is irreparable, and the requested emergency relief is narrowly drawn to ensure safety while this case proceeds.

## **FACTUAL BACKGROUND**

1. Plaintiff is an intersex female incarcerated at Nash Correctional. Plaintiff's gender identity and vulnerability classification have been known to Defendants for years. Exhibit C (Declaration of Ashlee Inscoe).

2. Ms. Inscoe lives in Unit 3, C Block, where she shares common areas, including telephone and bathroom with male incarcerated people. Exhibit A ("August/September 2024 King PREA report").

3. On August 23, 2024, at around 12:40-12:50 pm, Ms. Inscoe got on the inmate phone located at the front of unit 3, C Block (phone #20). The phone is about 10 feet from the bottom floor janitor's closet and a shower located beside the closet. When she got on the phone, the shower was unoccupied. Offender Lamarr E. King was sweeping the floor in the day room. *Id.*

4. Mr. King is a sexually-violent offender, serving time for seventeen sexual offenses, including five counts of rape. Exhibit B.

2

5. When King saw her get on the phone, he stopped what he was doing, went to his bunk, and came to the shower carrying a plastic day-room chair and his shower items. He entered the shower and closed the blue shower curtain. Exhibit A.

6. Ms. Inscoe was sitting in a chair on the phone looking away from the shower. *Id.*

7. After a couple of minutes, at about 12:56 pm, Ms. Inscoe heard King say: "Ashlee, let me put this dick in you." She was startled and when she looked toward the shower, King had the curtain pulled open and held open by a chair, and he was completely naked and masturbating while staring directly and intently at her. He was holding and vigorously stroking his erect penis. He appeared to ejaculate. *Id.*

8. Ms. Inscoe hung up the phone and notified Officer Alford of what had happened and asked to see the sergeant. *Id.*

9. Ms. Inscoe told Sgt D. Santiful what Mr. King did. Santiful viewed the camera (unit 3-C-96) and sent her to Ms. D. Clark (Unit Manager, unit 3). Ms. Inscoe reported what King had done to Ms.

3

Clark. Ms. Clark contacted Ms. J. Webb (PREA Compliance Manager). *Id.*

10.    Ms. Inscoe told Ms. Webb what King had done and that he had been repeatedly sexually harassing her. Ms. Webb looked at the camera footage, and contacted the Warden Ms. T. Lee and told Lee what King had done. *Id.*

11.    King was moved to Unit One (not a restricted housing area). Around 6 or 6:30 pm, King returned to Unit 3 and walked into C Block. He threatened Ms. Inscoe and said if she pursued the PREA report he would hurt her, saying to others: "That faggot Ashlee put a PREA on me for me jacking on him. He wants to look like a woman than I'm gonna come over there and fuck him like a woman." And then he said directly to Ms. Inscoe: "push that PREA and I'll fuck you up, I know where you live." *Id.*

12.    Ms. Inscoe reported these threats to the building sergeant. *Id.*

13.    On August 28, 2024, King sent an offender to Ms. Inscoe's block to give her a threat, saying if she didn't drop the PREA, he was "jacking on [her]." Meanwhile, King was heard bragging to other inmates about how many times he masturbated to her without

4

getting caught and that he wanted to come in her shower or room to sexually assault her. *Id.*

14.     On September 2, 2024, at the medication line, he said to her: "I'm still gonna get some of that ass." *Id.*

15.     Defendants accepted Ms. Inscoe's grievance on September 11, 2024, and they assigned it number 3710-2024-3CU-25752 and gave the PREA incident number 3710-24-244. Exhibit A.

16.     Despite having copies of Ms. Inscoe's August/September King PREA report," and producing it back to Plaintiff in discovery, and despite being specifically asked for "all" "PREA reports or investigations related to Plaintiff" "to present" in the discovery process, Defendants failed to turn over responsive documents about the investigation of the August/September 2024 King PREA incident.

17.     Plaintiff filed a motion to compel seeking all the unproduced PREA investigations. D.E. 46, 47, 47-1.  Plaintiff's motion to compel <u>specifically</u> sought investigation records of Ms. Inscoe's August/September 2024 King PREA report, among others. D.E. 47 at 19.

18. In response to Plaintiff's Motion to Compel, Defendant's counsel swore that all supplementation of PREA investigations was complete. D.E. 51-1 at 9 ("After the 1/16/2025 letter from Plaintiff's counsel, a request was sent to PREA Director Charlotte Jordan-Williams on February 11, 2025 requesting the additional specified documents listed in the CTS log. Additional follow up with Williams was conducted to ensure the request was understood. All documents have been supplemented."). Defendants' brief in response to the motion to compel all of the PREA investigation reports, including the August/September 2024 King PREA incident, states: "Defendants simply cannot produce what does not exist." D.E. 51 at 8.

19. Charlotte Jordan Williams is the North Carolina prison agency-wide PREA Coordinator, responsible for agency-wide compliance with PREA standards and regulations.

20. PREA mandates zero tolerance of sexual abuse and sexual harassment in adult prisons. 28 C.F.R. § 115.11. It requires that every agency employ an upper-level, agency-wide PREA coordinator with sufficient time and authority to develop,

6

implement, and oversee agency efforts to comply with the PREA standards in all of its facilities. *Id.* Each individual facility must also designate a PREA compliance manager. *Id.*

21.     PREA also requires that every allegation of sexual abuse and sexual harassment be investigated, including that every allegation of criminal behavior be referred for criminal investigation. 28 C.F.R. § 115.22.

22.     Upon learning of an allegation that an inmate was sexually abused, the staff first responder must separate the alleged victim and abuser and preserve evidence. 28 C.F.R. § 115.64.

23.     Any allegation of sexual abuse or sexual harassment requires that the agency conduct a prompt, thorough, and objective investigation by specialized investigators. 28 C.F.R. § 115.71(a). It includes gathering and preserving evidence (including electronic monitoring data, such as surveillance video), interviewing the victim, the accused, and witnesses, reviewing prior complaints or reports regarding the accused. 28 C.F.R. § 115.71(c)-(f).

7

24. The investigation must be documented in a written report and the reports shall be retained for as long as the alleged abuser is incarcerated, plus five years. 28 C.F.R. § 115.71(f-i).

25. The agency must issue written findings classifying the allegation as substantiated, unsubstantiated, or unfounded, and give notification to the victim. 28 C.F.R. § 115.73.

26. Either Nash prison officials failed to investigate the August/September 2024 King incident (in violation of PREA), or they failed to retain the relevant investigation materials (in violation of PREA), or their counsel has falsely sworn that Defendants fully supplemented the request for all PREA investigations, including a specific request for the August/September 2024 King incident.

27. The Attorney General's Office Public Safety section was sanctioned by Magistrate Judge Robert T. Numbers on October 17, 2025, for persistent discovery violations, inadequate preparation, and failure to meet professional obligations. Exhibit E. ("Few groups have so persistently tested the patience of this state's federal judiciary as the North Carolina Department of Justice's

8

Public Safety Section. From Manteo to Murphy, North Carolina's federal judges have chided, criticized, and chastised its attorneys for disregarding court orders and the federal rules. Yet the Public Safety Section's problems persist. Its persistent disregard for the authority of the federal courts and the rule of law is deeply troubling.")

28.    Last week, on February 12, 2026 (Exhibit B), King was transferred back to Nash Correctional from Caswell Correctional, in violation of the PREA requirement that a sexual abuser be kept separate from his victims. 28 C.F.R. §§ 115.64 (separate the alleged victim and abuser); 115.42 (keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive).

29.    King immediately resumed stalking and threatening Ms. Inscoe. Exhibit C.

30.    On February 16, 2026, Counsel for Plaintiff emailed the Warden of Nash Correctional, Talena Lee, copying counsel for defendants from the Attorney General's Office and the prison's

9

General Counsel, to notify them all of the risk of harm to Ms.

Inscoe posed by Mr. King. Exhibit D. There has been no response.

31. King has come into Ms. Inscoe's dorm to threaten her. She is

frightened to go to meals or to get her medicine. Exhibit C.

32. As of February 20, 2026, Defendants have not taken reasonable

steps to protect Ms. Inscoe and she fears she will be sexually

assaulted imminently. *Id.*

## LEGAL STANDARD

A Temporary Restraining Order ("TRO") and preliminary

injunction are governed by Fed. R. Civ. P. 65. The Court considers: (1)

likelihood of success on the merits; (2) likelihood of irreparable harm

absent relief; (3) balance of equities; and (4) public interest. *Winter v.*

*Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). "[T]he denial

of a constitutional right, if denial is established, constitutes irreparable

harm for purposes of equitable jurisdiction." *Ross v. Meese*, 818 F.2d

1132, 1135 (4th Cir. 1987). When a plaintiff seeks preliminary

injunctive relief for a constitutional violation, the "claimed irreparable

harm is inseparably linked to the likelihood of success on the merits[.]"

10

*WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (cleaned up); *accord Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc).

For TROs sought without notice, Rule 65(b) also requires specific facts showing immediate and irreparable injury and a certification describing notice efforts and why notice should not be required. Fed. R. Civ. P. 65(b)(1). Because Plaintiff is incarcerated, the Prison Litigation Reform Act (PLRA) further requires any preliminary injunctive relief to be narrowly drawn, extend no further than necessary, and be the least intrusive means to correct the harm. 18 U.S.C. § 3626(a)(2).

## ARGUMENT

### A. Plaintiff Is Likely to Succeed on the Merits of the Eighth Amendment Failure-to-Protect Claim

The Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from violence and sexual assault by other prisoners when officials are deliberately indifferent to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825 (1994).

11

## 1. Objective prong: substantial risk of serious harm

Ms. Inscoe faces constant physical and sexual danger from living in a men's prison. The Prison Rape Elimination Act ("PREA") standards consider "intersex" status, as well as past experiences with sexual victimization, to both be high risk factors for sexual abuse. 28 C.F.R. § 115.41 (2012). Additionally, being "feminine" in a men's prison is a known and common sense risk factor as well. *See Farmer v. Brennan*, 511 U.S. 825, 848–49 (1994) (noting respondents' admission that "because of petitioner's 'youth and feminine appearance' [petitioner] is "likely to experience a great deal of sexual pressure" in prison."). Sexual assault and rape in custody constitute serious harm. Plaintiff faces a substantial risk based on:

- Plaintiff's known vulnerability as an intersex female prisoner in a men's facility;

- specific threats and targeting described in the August/September 2024 King PREA grievance and report (Exhibit A), a litany of

other PREA reports that have either gone uninvestigated or unproduced,[1] and Plaintiff's recent Declaration (Exhibit C);

- Either a failure to properly investigate a serious incident by King in August/September 2024 or an unlawful failure to retain that investigation report or a false sworn declaration that the investigation report does not exist;

- housing/unit conditions that enable predation; and

- Defendants' refusal to implement basic protective measures.

These facts satisfy the objective requirement of a substantial risk of serious harm.

## 2. Subjective prong: Defendants' knowledge and deliberate indifference

Under *Farmer*, deliberate indifference exists where officials know of and disregard an excessive risk to inmate safety—meaning they are aware of facts from which the inference could be drawn that a substantial risk exists, and they draw that inference.

---

[1] Defendants have failed to produce records of at least eight PREA investigations, including one investigation at Avery Mitchell C.I., one investigation at Harnett C.I., and at least six investigations at Nash C.I. D.E. 47-1 at 7.

Here, Defendants were repeatedly put on notice through grievances and verbal reports, as well as this lawsuit, now pending over three years. Yet, Defendants have failed to turn over evidence that shows the harm that Ms. Inscoe faces, including the investigation reports, witness statements, and video surveillance video showing the masturbation incident in August/September 2024. Defendant's counsel swore that Defendant had already turned over all PREA materials, and stated that "Defendants simply cannot produce what does not exist." D.E. 51-1 at    9; D.E. 51 at 8.

Now, Defendants have returned King, a known threat to Ms. Inscoe, back to the general population at Nash Correctional, and they have continued to refuse to move Ms. Inscoe to a female facility, where she would be safe from this type of harm. The warden of Nash and counsel for Defendants were notified of King's risk to Ms. Inscoe by email on February 16, 2026, but they keep Plaintiff in the same dangerous conditions. This constitutes deliberate indifference.

## 3. Causation and ongoing violation

Defendants' actions have left Plaintiff in ongoing jeopardy. The risk is current and escalating, satisfying the requirement for forward-looking injunctive relief.

## B. Plaintiff Will Suffer Irreparable Harm Without Immediate Relief

Plaintiff faces imminent risk of sexual assault, physical injury, trauma, and death. These harms are irreparable—no post hoc money damages can undo sexual violence or severe physical injury. Courts routinely recognize that imminent physical harm and ongoing constitutional violations constitute irreparable injury supporting emergency injunctive relief.

Plaintiff's Declaration provides specific facts showing the threat is not speculative, and the detailed contemporaneous documentation of the August/September 2024 incident shows the detailed basis for Ms. Inscoe's fears. Exhibit A, Exhibit C.

## C. The Balance of Equities Strongly Favors Relief

The requested relief requires Defendants to do what the Constitution already demands: take reasonable measures to protect Plaintiff from known threats. By contrast, denying relief risks

catastrophic harm. Administrative inconvenience cannot outweigh imminent risk of rape or serious injury.

## D. The Public Interest Favors Preventing Sexual Violence and Enforcing Constitutional Minimums

The public has a strong interest in ensuring correctional institutions comply with the Constitution and prevent sexual assault in custody. The requested order is tailored to prevent harm while respecting prison administration. The public interest is also served by injunctive relief. *See Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("[U]pholding constitutional rights surely serves the public interest.").

## E. The Requested Relief Complies with the PLRA

For cases concerning prison conditions, the Prison Litigation Reform Act ("PLRA") states that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). A court must also give "substantial weight to any adverse impact on public

16

safety or the operation of a criminal justice system caused by the preliminary relief." *Id*.

Here, Plaintiff requests immediate, targeted safety measures necessary to prevent sexual assault and serious injury while this case proceeds. The relief sought complies with the PLRA.

## F. The Court should waive Rule 65's bond requirement or impose a nominal bond.

Federal Rule of Civil Procedure 65(c) provides that "a court may issue a preliminary injunction . . . only if the movant gives security," but "the district court retains the discretion to set the bond amount as it sees fit or waive the security requirement." *Pashby v. Delia*, 709 F.3d 307, 331-32 (4th Cir. 2013). This security requirement ensures the injured party is compensated for harms it may suffer because of an improper injunction. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999). Defendants here face no risk of harm should an injunction issue. When a plaintiff of limited financial means seeks to vindicate their constitutional rights and there is significant public interest underlying the claim, waiver of bond is warranted. *Taylor-Failor v. County of Hawaii*, 90 F. Supp. 3d 1095, 1103 (D. Haw. 2015). Waiver is therefore appropriate. In the alternative, Plaintiffs

respectfully ask that the Court order only a nominal bond. *See*, *Hoechst*,

174 F.3d at 421 n.3.

## **REQUESTED RELIEF**

Plaintiff respectfully requests the Court:

1. Issue a TRO ordering Defendants, effective immediately, to:

   - Separate King from Plaintiff and prohibit all contact;
   - Place Plaintiff in a female prison facility;
   - Keep Plaintiff in general population, i.e., *not* place Plaintiff in punitive housing/protective custody/lock-up/restrictive housing or administrative segregation, etc.;
   - Ensure Plaintiff has safe access to showers, the medicine line, common areas, and meals without exposure to aggressors;
   - Prohibit retaliation for reporting risk, seeking PREA protections, or filing this action; and
   - Preserve and <u>produce</u> relevant evidence (logs, PREA investigation reports, video surveillance camera footage).

2. Set an expedited hearing on a preliminary injunction at the earliest practicable date and order Defendants to show cause why a preliminary injunction should not issue.

3. Grant any further relief the Court deems just and proper.

## Rule 65(b) Notice / Certification

Plaintiff seeks a TRO with notice. On February 20, 2026, around 3:20 pm, Plaintiff provided notice to Defendants by email to their Counsel. A TRO is necessary because harm is imminent and cannot await ordinary briefing.

Respectfully submitted on February 20, 2026,

/s/Elizabeth Guild Simpson
Elizabeth Guild Simpson
N.C. Bar No. 41596
EMANCIPATE NC
P.O. Box 309
Durham, NC 27702
919-682-1149
elizabeth@emancipatenc.org

*Counsel for Plaintiff*

19

## CERTIFICATION OF COMPLIANCE

I certify that, excluding the caption, signature block, and certificates of service and compliance, this brief does not exceed the 25-page limit prescribed by W.D.N.C. Local Rule 7.1(d).

Respectfully submitted on February 20, 2026.

/s/Elizabeth Guild Simpson
Elizabeth Guild Simpson

# AI CERTIFICATION

1.   The undersigned counsel hereby certifies as follows.

2.   No artificial intelligence was employed in doing the research for
     the preparation of this document, with the exception of such
     artificial intelligence embedded in the standard on-line legal
     research sources Westlaw, Lexis, FastCase, and Bloomberg;

3.   Every statement and every citation to an authority contained in
     this document has been checked by an attorney in this case and/or
     a paralegal working at his/her direction (or the party making the
     filing if acting pro se) as to the accuracy of the proposition for
     which it is offered, and the citation to authority provided.


     Respectfully submitted on February 20, 2026.


                                        /s/Elizabeth Guild Simpson
                                        Elizabeth Guild Simpson

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Elizabeth Guild Simpson
Elizabeth Guild Simpson